# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS – CENTRAL DIVISION

| | |
|---|---|
| JOSEPH M. LOSAPIO,<br>    Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| METROPOLITAN LIFE INSURANCE<br>COMPANY,<br>    Defendant. | )<br>)<br>)<br>) |

C.A. NO.:

# 04-40156

## NOTICE OF REMOVAL

TO:    Civil Clerk's Office
East Brookfield Division District Court
544 E. Main Street
East Broookfield, MA 01515

Chief Judge and Judges of the United States
District Court for the District of Massachusetts
Clerk's Office
United States District Court
District of Massachusetts - Central Division
Harold D. Donohue Bldg. & Courthouse
595 Main Street
Worcester, MA 01608

John F. Keenan, Esquire
390 Main Street
Worcester, MA 01608

Pursuant to 28 U.S.C. §1441 and 1446, Defendant Metropolitan Life Insurance

Company ("MetLife") files this Notice of Removal of this Civil Action entitled <u>Joseph</u>

<u>M. Losapio v. Metropolitan Life Insurance Company</u>, from the East Brookfield Division

District Court, Worcester County, Commonwealth of Massachusetts, to the United States

District Court for the District of Massachusetts.

FILING FEE PAID
RECEIPT # 704384
AMOUNT $ 60 -
BY DPTY CLK
DATE 8/17/04

In support of this Notice of Removal, Defendant, through its attorneys, states as follows:

1.    As appears from the docket, files and records of the East Brookfield District Court, Worcester County, this action was commenced on or about July 14, 2004. On or about July 26, 2004, Plaintiff's attorney served by certified mail a Summons and Complaint upon MetLife. Copies of the Summons and Complaint are attached to this Notice of Removal as Exhibit "A."

2.    Plaintiff asserts that he is a resident of Massachusetts. (Complaint, Paragraph 1).

3.    MetLife was at the time of the commencement of this action, and continues to be, a life insurance company organized under the laws of the State of New York, with its principal place of business in the State of New York.

4.    This is a civil action alleging unfair and deceptive business practices pursuant to M.G.L. c. 93A and 176D relating to Plaintiff's claim for disability benefits under Disability Income Insurance Policy, Number: 15-6026745 ("the Policy"), which was issued by the Lincoln National Life Insurance Company to Plaintiff. Defendant MetLife currently is the Claims Administrator for the Policy.

5.    Jurisdiction in the Federal Court is founded on complete diversity of citizenship between Plaintiff and Defendant under 28 U.S.C. §1332. Plaintiff has claimed entitlement to a monthly benefit payment under the Policy of $2,700 per month. Complaint, Paragraph 12.

6.    In his March 24, 2004 Demand letter (attached to Plaintiff's Complaint,

2

Exhibit "A"), Plaintiff relies on the medical opinion of Dr. Roland R. Caron, M.D., stating that Plaintiff's injuries are "chronic," "persistent" and he is unable to work "more than 4 to 6 hours per day." If, as he has asserted, Mr. Losapio remains disabled, there exists an amount in dispute of $2,700.00 monthly benefits under the Policy until he reaches the age of 65. In the alternative, the $2,700.00 monthly benefits claimed by Plaintiff in his Complaint relate to the period of August, 2003 through June of 2004. The Complaint was filed July 14, 2004; thus, the benefits at issue from August, 2003, through the July 14, 2004 filing date, amount to approximately $30,000.00. Plaintiff also seeks treble damages under M.G.L. C. 93A and C. 176D, which (independent from the total amount of potential disability benefits at issue) raises the amount of monetary damages to approximately $90,000.00. Therefore, the value of Plaintiff's claim exceeds, exclusive of interest and costs, under either theory, the sum of $75,000.00.

7.    This Notice of Removal is filed within thirty days of receipt of the Summons and Complaint in this action by Defendant and is within the time period required by law, 28 U.S.C. §1446(b).

8.    Written notice of the filing of this Notice of Removal will be given to the adverse parties as required by law.

**WHEREFORE**, MetLife requests that this action be removed from the East Brookfield District Court, Worcester County, Commonwealth of Massachusetts to the

United States District Court for the District of Massachusetts – Central Division.

Defendant,
METROPOLITAN LIFE INSURANCE
COMPANY,
By Its Attorneys,

_____
James J. Ciapciak (BBO # 552328)
Joseph R. Daigle  (BBO # 564203)
CIAPCIAK & ASSOCIATES, P.C.
99 Access Road
Norwood, MA 02062
(781) 255-7401

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing document was served upon Counsel of Record on August ___, 200_.

_____
James J. Ciapciak

4



Uniform Form DCM-13
AR4-76

# Trial Court of The Commonwealth
# District Courts of Massachusetts

### East Brookfield Division
544 East Main Street, East Brookfield, Ma 01515

Worcester _____, ss

JOSEPH M. LOSAPIO

VS.

METROPOLITAN LIFE INSURANCE
COMPANY

Civil Action No. ___0469CV0226

### SUMMONS
### (Rule 4)

To defendant Metropolitan Life Insurance Company of 4100 Boy Scout Blvd., Tampa, Fl,
                              (name)                                                         (address)

You are hereby summoned and required to serve upon __John F. Keenan, Esq.___, plaintiff('s

attorney), whose address is __390 Main St., Worcester, MA 01608___, a copy of your answer to
the complaint which is herewith served upon you, within 20 days after service of this summons, exclusive of
the day of service. You are also required to file your answer to the complaint in the office of the Clerk of this
court either before service upon plaintiff('s attorney), or within 5 days thereafter. If you fail to meet the above
requirements, judgment by default may be rendered against you for the relief demanded in the complaint. You
need not appear personally in court to answer the complaint.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you
may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of
the plaintiff's claim or you will be barred from making such claim in any other action.

WITNESS __Charles A. Abdella___, Presiding Justice, on __July 23, 2004___.
                                                                                                     (date)

(SEAL)

_Elizabeth M. Maxwell_
                                        Clerk

Note:  (1)  When more than one defendant is involved, the names of all defendants should appear in the action. If a separate summons
              is used for each defendant, each should be addressed to the particular defendant.
        (2)  The number assigned to the complaint by the Clerk at commencement of the action should be affixed to this summons
              before it is served.

### RETURN OF SERVICE

On _____, I served a copy of the within summons, together with a copy of the
            (date of service)

complaint in this action, upon the within named defendant, in the following manner (see Rule 4 (d) (1-5)):

_____
(signature)

_____
(name and title)

_____
(address)

Note:  (1)  The person serving the process shall make proof of service thereof in writing to the court and to the party or his attorney,
              as the case may be, who has requested such service. Proof of service shall be made promptly and in any event within
              the same time during which the person served must respond to the process. Rule 4(f).
        (2)  Please place date you make service on defendant in the box on the copy served on the defendant, on the original re-
              turned to the court and on the copy returned to the person requesting service or his attorney.
        (3)  If service is made at the last and usual place of abode, the officer shall forthwith mail first class a copy of the summons
              to such last and usual place of abode, and shall set forth in the return the date of mailing and the address to which the
              summons was sent (G.L. c. 223, sec. 31).

This form prescribed by the Chief Justice of the District Courts

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                          DISTRICT COURT DEPARTMENT
                                        EAST BROOKFIELD DIVISION
                                        CIVIL ACTION
                                        NO.  0469CV0226

JOSEPH M. LOSAPIO            )
        Plaintiff           )
                            )
vs.                         )          COMPLAINT
                            )
METROPOLITAN LIFE           )
INSURANCE COMPANY           )
        Defendant           )

1.  Plaintiff Joseph M. Losapio is a resident of Worcester, Worcester County, Massachusetts.

2.  Defendant Metropolitan Life Insurance Company (hereinafter referred to as "MetLife") is a corporation with a usual place of business at 4100 Boy Scout Boulevard, Tampa, Florida 33607, and is licensed to do business in the Commonwealth of Massachusetts.

3.  By a policy of insurance issued by Lincoln National Life Insurance Company (hereinafter referred to as "Lincoln Life") to the plaintiff, dated October 22, 1985, Lincoln Life undertook and agreed to pay initial monthly benefits of up to two thousand ($2,000.00) dollars to the plaintiff in the event the plaintiff became partially disabled.

4.  On August 17, 1989 that policy was amended to change the word "Partial" to "Residual" as set forth in the attached letter from Lincoln Life marked as Exhibit "A".

5.  On March 23, 1995 plaintiff sustained injuries in a motor vehicle accident which caused a partial disability.

6.  Thereafter, the plaintiff, who is an attorney, made a claim with Lincoln Life for residual disability benefits.

7.  At the time the plaintiff made his claim, the disability insurance industry was undergoing a crisis because it had miscalculated a number of claims that would be filed when it aggresively marketed disability policies to professionals in the 1980s and early 1990s.

8.   Lincoln Life conducted an extensive investigation of the plaintiff's claim for residual disability benefits from 1995 through June of 1998 and, as a result, determined that the plaintiff had met the policy requirements for payment for residual disability benefits.

9.   Accordingly, Lincoln Life paid, without a Reservation of Rights, residual disability benefits to the plaintiff through November of 1999.

10.   In December of 1999, Lincoln Life transferred the administration of its individual disability insurance claims to the defendant, MetLife.

11.   From December of 1999 through March of 2004, the defendant committed numerous unfair or deceptive acts declared unlawful under Massachusetts General Laws c. 176D and c. 93A in connection with its administration of the plaintiff's residual disability claim, all of which are more fully set forth on pages 5 through 7 in the plaintiff's 93A demand letter to the defendant dated March 24, 2004, a copy of which is attached hereto and marked as Exhibit "B".

12.   The defendant's unfair and deceptive conduct resulted in the defendant's unfairly denying the plaintiff's claim for residual disability benefits for the months of August 2003 through January 2004, at the rate of $2,700.00 per month for a total of $16,200.00.

13.   The defendant denied payment to the plaintiff even though all medical evidence demonstrated that the plaintiff had met the policy requirements for "Residual Disability".

14.   The acts of the defendant were willfully and knowingly done in violation of Massachusetts General Laws c. 176D and c.93A.

15.   On March 24, 2004, the plaintiff sent to the defendant, by certified mail, written demand for relief, a copy of which is attached hereto and marked as Exhibit "B".

16.   The defendant failed to tender a written offer of settlement within thirty (30) days.

17.   Defendant's refusal to grant relief upon demand was made in bad faith and with reason to know that the acts complained of violated Massachusetts General Laws c. 176D and c.93A.

18. As a result of the defendant's unfair and deceptive acts, the plaintiff has been damaged in the amount of $16,200.00 for the benefits due from August of 2003 through January of 2004, together with any additional benefits due thereafter.

WHEREFORE, plaintiff demands judgment against defendant including triple damages, attorneys fees, interest and costs.

By his attorney,

JOHN F. KEENAN
390 Main Street
Worcester, MA 01608
(508) 791-8181
BBO#264000
Dated: July 14, 2004

1300 South Clinton Street
P.O. Box 1110
Fort Wayne, Indiana 46801

**LINCOLN
NATIONAL**
LIFE INSURANCE
COMPANY

August 17, 1989


LOSAPIO,JOSEPH M
736 PLEASANT ST
WORCESTER,MA 01602


POLICY NUMBER: 1506026745

Dear Valued Policyholder:

Lincoln National recently announced enhancements to its non-cancellable
Pro Add Contract. In our continuing effort to keep your contract provisions
up-to-date, we are happy to include these enhancements in your existing policy.

At no additional cost, effective upon your state approval (this has been
approved in your state) and contingent that you were not disabled on that date,
the following improvements will be part of your existing coverage:

1.  We will change the wording "Partial" to "Residual" to reflect current
    terminology.

2.  Under the DEFINITIONS section of your policy, the definition of
    "Residual (Partial) Disability" has been liberalized to read as
    follows:

    "during the Elimination Period because of Injury or Sickness:
    a) You are not able to do one or more of the main duties of Your
       Occupation or You can perform all of Your normal duties but not
       for as much time as is normally required to perform them; and
    b) You are under a Physician's Care; and
    c) Your current Monthly Income is 80% or less of Your Prior Monthly
       Income.

    Following the Elimination Period, Residual Disability means that due
    to the continuation of that Injury or Sickness:

    a) Your Current Monthly Income is 80% or less of Your Prior Monthly
       Income; and
    b) You are under a Physicians's Care."

    As you can see, after the elimination period, only a) and b) will now
    need to be satisfied.

3.  The calculation of "Current Monthly Income" for a Residual (Partial)
    Disability has been liberalized to include only income earned and
    received after the commencement of disability. This provision may
    increase your residual benefit since it will not penalize you for
    receipt of accounts receivable income from billings prior to
    disability or for income billed but not yet received.

1300 South Clinton Street
P.O. Box 1110
Fort Wayne, Indiana 46801



LIFE INSURANCE
COMPANY

4.  Under the DEFINITIONS section, the "Maximum Benefit Period" for a
    Residual (Partial) Disability has been extended past age 65 to a maximum
    of 24 months for disabilities beginning after age 63 and before age
    65.

5.  Policy renewability has been extended from age 75 to lifetime if you
    are actively and regularly employed on a full time basis.  The maximum
    benefit period for renewal after age 75 is 12 months.

6.  The Recurrent Disability provision has been extended from 6 to 12
    months. (Not approved in Arkansas, Iowa, Pennsylvania,
    South Carolina, Texas, Virginia and New Jersey.)

7.  A Survivor Benefit has been added to your policy.  If you die while
    receiving benefits under your policy and if you were totally disabled
    for at least 24 months prior to your death, we will pay the monthly
    benefit for up to three months, but not beyond the remainder of the
    maximum benefit period.

If your existing coverage includes the Own Occupation Benefit Rider, the
Option to Increase Benefit Rider, or the Supplemental 60 Benefit Rider, you
also receive the corresponding enhancements below:

1.  The Own Occupation Benefit Rider can be renewed after age 65.

2.  The Option to Increase (O.I.) Rider has numerous enhancements:

    a) The ages at which you can buy this O.I. rider or add to your
       existing O.I. rider has been extended to age 49.
    b) The maximum amount of O.I. which you can purchase has also been
       increased.
    c) Under your O.I. rider, you have the right to increase the amount of
       your Policy Benefit on each option date.  Prior to age 46, the
       amount of increase on any option date can be up to 100% of your
       Total Amount of Options.  After age 46, the amount of increase on
       any option date can be up to 1/3 of the Total Amount of Options.
       These amounts of increases reflect our new liberalized amounts.
    d) The termination date of your rider has been extended from "the
       anniversary of the Date of Issue next following your 50th birthday"
       to "the anniversary of the Date of Issue next following your 52nd
       birthday."  This means you will have two additional years to
       exercise your option amounts.  The rider will still continue to
       terminate if you have used up all your option amounts or if your
       policy has terminated.
    e) You can apply for an increase in your Policy Benefit on any option
       date even though you are disabled.  Up to $600 of this increase
       will be payable while that period of disability continues.  Any
       increase, including the $600, will be subject to our current issue
       and participation limits.
    f) When an increase is exercised, the premium for this rider will be
       reduced.  The reduced premium will be based on the Total Amount of
       Options remaining.

1300 South Clinton Street
P.O. Box 1110
Fort Wayne, Indiana 46801



**LINCOLN NATIONAL**
LIFE INSURANCE
COMPANY

5.  The option to Convert Supplemental 60 Benefit Rider is our newest
    rider and we are excited about it.  This rider allows you, on each
    anniversary of the Date of Issue, to convert your Supplemental 60
    Benefit to an Age 65 Benefit Period, without evidence of insurability.
    This rider is available at a small premium.

We appreciate your business and look forward to serving you.  Be sure to
attach this letter to your policy.  If you would like to add, or increase
any of the riders mentioned above, or if you have any questions, please feel
free to contact your agent.

Sincerely,


Insurance Operations Department
Individual Products Division

# JOSEPH M. LOSAPIO

*Counselor at Law*
736 PLEASANT STREET
WORCESTER, MASSACHUSETTS 01602
(508) 752-4541 FAX (508) 791-0342

Certified Mail No. 7001 0320 0001 4298 2409
RETURN RECEIPT REQUESTED

March 24, 2004

Ms. Bonnie Heath
MetLife Acting as Agent for
The Lincoln National Life Insurance Company
P.O. Box 30429
Tampa, FL 33630-3429

RE:Policy #:   15-6026745

Dear Ms. Heath:

     This is a demand for relief under Massachusetts General Laws c. 93A, §9. This demand is being made because of the numerous unfair and deceptive acts declared unlawful under M.G.L. c. 93A and c. 176D committed by Metropolitan Life Insurance Company (hereinafter referred to as "MetLife") in connection with the administration of my Disability Income Insurance Policy with Lincoln National Life Insurance Company (hereinafter referred to as "Lincoln Life").

### HISTORY OF MY POLICY WITH LINCOLN LIFE

     On September 25, 1985, I applied for a Disability Income Insurance Policy with Lincoln Life to replace a policy that I had with The Paul Revere Life Insurance Company (hereinafter referred to as "Paul Revere") since approximately 1979.

     When I applied for this Policy with Lincoln Life, it was represented to me, by Lincoln Life's agents and advertisements that:

1. Lincoln Life was one of the premier companies in the business of providing disability insurance to self-employed professionals;
2. The Policy had the most liberal definitions for disability at that time in the industry;
3. Lincoln Life had a reputation for paying its claims and paying them fairly; and
4. If I purchased the disability income policy from Lincoln Life, and became disabled, it would provide myself and my family with financial security and peace of mind.

When Lincoln Life made these representations, it was well aware that the most important factor in selecting an insurance product from the consumer's point of view is the record of the company in paying its claims and paying them fairly. Sewall, Charles E. (the former President and CEO of The Paul Revere Life Insurance Company) Disability Income Insurance The Unique Risk, 3rd Ed. (1994) Page 81.

Based on these representations by Lincoln Life, I agreed to terminate my existing coverage with Paul Revere Life Insurance Company and purchased the Policy from Lincoln Life. The Policy was issued on October 22, 1985 and was an "Own Occupation Policy" with my occupation listed on the application as an attorney with exact duties being those of a trial attorney. The Policy had a ninety (90) day elimination period. The total monthly benefit was $2,000.00.

On August 17, 1989, Lincoln Life announced enhancements to my Policy. Lincoln Life indicated that:
"the following improvements will be part of your existing coverage:
1. We will change the wording 'Partial' to 'Residual' to reflect current terminology.
2. Under the DEFINITIONS section of your policy, the definition of "Residual (Partial) Disability" has been liberalized to read as follows: 'during the Elimination Period because of Injury or Sickness:
   a) You are not able to do one or more of the main duties of Your Occupation or You can perform all of Your normal duties but not for as much time as is normally required to perform them; and
   b) You are under a Physician's Care; and
   c) Your current Monthly Income is 80% or less of Your Prior Monthly Income.
Following the Elimination Period, Residual Disability means that due to the continuation of that Injury or Sickness:
   a) Your Current Monthly Income is 80% or less of Your Prior Monthly Income; and
   b) You are under a Physician's Care.
As you can see, after the elimination period, only a) and b) will now need to be satisfied."
Attached hereto as Exhibit "A" is letter from Lincoln National Life Insurance Company, dated August 17, 1989.

When Lincoln Life made these enhancements, it was aware that the main competition between companies was on differences in contractual language, especially the definition of disability. Sewall, Charles E. Disability Income Insurance The Unique Risk, 3rd Ed. (1994) Page 81. These enhancements were made, therefore, to induce me not to cancel my Policy and replace it with a policy through other insurers with a more liberal policy definition. Sewall, Charles E. Disability Income Insurance The Unique Risk, 3rd Ed. (1994) Page 81.

2

Previous to Lincoln Life making these enhancements, I had purchased a policy with The Paul Revere Insurance Company, on April 18, 1989, that had similar language for the definition of residual disability. In addition, I purchased a policy with CNA Insurance Company, on November 1, 1990, that had even more liberal language for the definition of residual disability.

## HISTORY OF MY CLAIM

On March 23, 1995, I was involved in a motor vehicle accident. I was the operator of a vehicle that was stopped to make a left hand turn, when it was rearended by another vehicle. I was initially treated at the Emergency Room at UMass. Hospital and then by Roland R. Caron, M.D., orthopedic surgeon. Dr. Caron's diagnosis was acute cervical and lumbar sprain and several right ankle sprain. An MRI of my right ankle, performed on April 4, 1995, indicated I had sustained a bone bruise to my right ankle. As a result of my injuries, I was unable to perform my normal duties at work and had to reduce my schedule to half day for the period from March 23, 1995 until July 1, 1995. When I returned to work, I experienced continuing pain in my neck that made it difficult to perform my normal duties and was forced to again reduce my work schedule.

On September 22, 1995, Lincoln Life notified me that my disability coverage had lapsed for non payment of premium. This was the only time that I had failed to pay the quarterly premium and this failure was due to the difficulties I was having concentrating because of my neck pain. For the Policy to be reinstated, I had to either demonstrate that I had not received recent medical treatment or that I was disabled at the time my Policy lapsed. Since I had received extensive medical treatment because of my motor vehicle accident, I elected to file a claim for disability benefits.

On October 23, 1995, I filed a claim with Lincoln Life for residual disability benefits, together with the initial Proof of Loss Statement and medical reports from my treating physicians, verifying that I was suffering from chronic neck strain, which prevented me from performing my duties as an attorney in my normal manner. At the same time, I filed claims for residual disability benefits with CNA Insurance Company and Paul Revere. During this time period, the disability insurance industry was undergoing a crisis because it had miscalculated the number of claims that would be filed when it aggressively marketed these policies to professionals in the 1980s and early 1990s. As a result, the industry was now even more aggressively disputing claims made by their policy holders, and Lincoln Life was no exception.

Without making any payment, Lincoln Life continued to request additional information through February of 1996. In addition, Lincoln Life required me to attend on January 25, 1996, an Independent Medical Examination with Dr. Israel Hurwitz, an orthopedic surgeon, with an office in Marlborough, MA. On February 19, 1996, Lincoln Life issued payment to me for residual disability benefits due me through December of 1995.

3

On May 13, 1996, Lincoln Life informed me that they were unable to consider payment of benefits beyond January 24, 1996, because based on Dr. Hurwitz's examination, "it does not appear that you have limitations or restrictions that may prohibit you from performing the duties of your occupation." Lincoln Life took this position even though the August 17, 1989 enhancements to my Policy had eliminated this requirement and Dr. Hurwitz had stated that I was still suffering from cervical strain. Dr. Hurwitz also indicated that I was a straight-forward, honest individual, and there was no evidence of symptom magnification.

Through the remainder of 1996, I continued to submit medical records from my attending physicians, Roland R. Caron, M.D., an orthopedic surgeon, Stjepan Kereshi, M.D., a neurologist and Reinhard H. Bartelmann, D.C., a chiropractor . All of these records confirmed that I was still suffering from chronic neck strain, which prevented me from working more than an average of six (6) hours per day. In addition, I supplied Lincoln Life with a MRI report from Central Mass. Magnetic Imaging, Inc., dated March 28, 1996, that indicated I had a "small degenerative spur to the left of C3-4 and tiny disc herniation at C5-6."

Despite this medical documentation and the policy language for residual disability that eliminated the need for me to document I was not able to do one or more of my main duties or that I could not perform my normal duties for the time normally required to perform them, Lincoln Life refused to pay me additional benefits.

On April 17, 1997, I sent to Lincoln Life the reports of Vincent R. Giustolisi, M.D., dated December 5, 1996 and Philip J. Lahey, Jr., M.D., dated March 17, 1997, orthopedic surgeons, who examined me on behalf of other insurance companies. Both Dr. Giustolisi and Dr. Lahey verified that I was suffering from a chronic and now permanent neck strain and was permanently partially disabled.

After receiving these reports, Lincoln Life issued payment for benefits due me through March of 1997. In addition, Lincoln Life, by letter of May 27, 1997, notified me that they were issuing payment under a reservation of rights. Lincoln Life detailed numerous issues, both financial and medical, that Lincoln Life wished to address before any further payment was made. Lincoln Life continued to thoroughly investigate my claim through June of 1998, when they finally made payments without any reservation of rights. One of the issues raised by Lincoln Life was whether another Independent Medical Examination was warranted. Lincoln Life concluded that, based on the Policy definition for residual disability benefits and the reports I had submitted, that such an examination was not warranted.        . . . . . . . .

Payments were made routinely by Lincoln Life throughout the remainder of 1998 and 1999. At the same time, however, Lincoln Life was, without my knowing it, in the process of withdrawing from the disability insurance industry.

4

## METLIFE'S UNFAIR AND DECEPTIVE CLAIMS ACTS

On December 17, 1999, I was informed by MetLife that they had assumed responsibility for the administration of my claim for disability income benefits. Beginning on that date and continuing through the present time, MetLife has committed numerous unfair or deceptive claims acts declared unlawful under, M.G.L. c. 93A and 176D, in connection with the administration of my Policy that have deprived me of the financial security and peace of mind promised me by Lincoln Life. In addition, as a result of MetLife's unfair and deceptive acts, I have been damaged in the amount of $16,200.00, the disability benefits due me for the months of August 2003 through January 2004. The unfair and deceptive claims acts committed by MetLife are as follows:

1. MetLife obtained my confidential records from Lincoln Life and reviewed these records without my authorization.

2. In its notice of December 17 1999, MetLife indicated that it was reserving "all its rights and defenses until such time as a complete review of your file can be accomplished." This reservation was issued even though Lincoln Life had been paying my benefits without any such reservation and that MetLife had no grounds for any such reservation. In addition, MetLife gave no explanation for its issuance of this reservation of rights.

3. In the same notice, MetLife requested that I provide them with proof that I applied for Social Security Disability Benefits. This request was made even though Lincoln Life had never made such a request and it was obvious that, based on my medical records and my continuing work history, I was not eligible for Social Security benefits.

4. On July 18, 2000, MetLife unfairly indicated that my benefits under the Supplemental 60 Benefit Rider ended on June 22, 2000, when in fact I was eligible for those benefits for an additional four (4) months.

5. MetLife continued to issue payments to me under a reservation of rights through May 2000, issued payment for the period from June 2000 through September 2000, without a reservation of rights, but again issued benefits under a reservation of rights for the period from October 2000 through August 2001, without any reasonable basis for doing so and without any explanation.

6. Throughout 1999, 2000 and 2001, MetLife unfairly required me to submit financial documentation that I had previously provided to Lincoln Life or had not been required to submit by Lincoln Life to substantiate my claim for residual disability benefits. In October of 2001, MetLife unfairly compelled me to submit to a complete financial audit of my records for the calendar years 1994 through October 2001, even though Lincoln Life had waived any reservation of rights for the period through

November 1999. After the audit was completed, MetLife failed to provide me with the results of same. In addition, MetLife failed to properly calculate my Prior Monthly Income and to make the proper adjustments in my Prior Monthly Income as required by the Policy.

7. After paying benefits without any reservation of rights for the period from September 2001 through December 2001, MetLife again issued benefits under a reservation of rights for the benefits due for January 2002 through November 2002, without any reasonable basis for doing so and without explanation, issued payment without a reservation of rights for the month of December 2002, and again reissued a reservation of rights for the payment of January 2003, without any basis for doing so, and without any explanation.

8. In its letter to me of February 14, 2003, MetLife misstated the definition of Residual Disability, by indicating that one of the requirements to be met under a claim for residual disability is that "a) you are not able to do one or more of the main duties of your occupation, or you can perform all of your normal duties but not for as much time as is normally required to perform them." MetLife made this statement despite being aware that this requirement had been eliminated by the August 17, 1989 letter from Lincoln Life. MetLife also unfairly concluded in that letter that "we are unable to document any current impairment and resultant restrictions and limitations." This determination was made despite, my having continually supplied MetLife with Attending Physician's Statements documenting that I still suffered from chronic neck strain, and was still partially disabled and despite MetLife having absolutely no medical evidence whatsoever to dispute this.

9. In a letter of March 14, 2003, MetLife admitted that it had misstated the definition for Residual Disability. Despite this admission, MetLife still unfairly interpreted the Policy language and medical reports and concluded that "we are unable to document any medical impairment to warrant the payment of further benefits." MetLife used this conclusion as a basis for requiring me to attend an Independent Medical Examination. MetLife denied my assertion that it had already determined that it would use the IME as an excuse to terminate my benefits.

10. On April 15, 2003, I was examined, at MetLife's request, by Mark Palumbo, M.D., an orthopedic surgeon, whose office is located in East Greenwich, RI, approximately one mile from MetLife's regional headquarters located in Warwick, RI. Dr. Palumbo issued reports to MetLife, dated April 15, 2003 and May 6, 2003. After making a payment to me for my July benefits without any reservation of rights, MetLife, in a letter dated August 6, 2003, indicated that it had found that there was no further basis for payment of residual disability benefits. MetLife reached its conclusion based on Dr. Palumbo's opinion that I am capable of working an eight (8) hour day. MetLife reached this conclusion despite Dr. Palumbo specifically stating that:

       1. "The present diagnosis of the insured is chronic mechanical neck pain."
       2. "There are subjective findings that support the diagnosis including:

          restricted cervical range of motion, mild posterior neck tenderness."

    3. "The results of the physical examination are consistent with the
       insured's claimed restrictions."

    4. "There is no evidence of symptoms magnification."

MetLife's denial was an unfair and bad faith interpretation of Dr. Palumbo's report
and the definition of residual disability.

11. MetLife also unfairly interpreted the medical reports I had provided. From January
    2003 through August 2003, I provided MetLife with the following:

        1. MRI report, dated January 29, 2003, showing a straightening
          of my cervical spine, and additional central disc herniation at C6-7
          and additional bone spurring at C6-7;

        2. Physical therapy records from Physical Therapy Associates
          for the period from March 11, 2003 thru April 23, 2003,
          which documented objective signs of my chronic neck condition
          and limited functional capacity; and

        3. Attending Physician's Reports of Reinhard H. Bartelmann, D.C.,
          dated March 6, 2003, April 14, 2003 and July 2, 2003, which
          documented my ongoing partial disability.

Any reasonable insurer, acting in good faith, would have interpreted these records,
in conjunction with the medical records that I had previously submitted and Dr.
Palumbo's report, to conclude there was an insufficient basis to terminate my benefits.

12. Despite my requests to do so, MetLife refused to change its position. MetLife,
    however, continually encouraged me to submit additional medical information for
    their consideration. MetLife did so, even though it had no intention of seriously
    considering additional medical information provided by me. On November 18, 2003,
    I sent to MetLife the following:

        1. EMG Report of Stjepan Kereshi, M.D., dated 9/17/03
          which indicated that the neurological findings show mild
          chronic diffused radiculopathy ; and

        2. Consultation report of Dr. Kereshi, dated 9/24/03, that
          indicated that the patient probably is moderately limited
          to his activities, and he should avoid any prolonged sitting
          in one position for a long period of time. His work is limited
          because of that. He probably should not work more than 6
          hours at a time. Dr. Kereshi's report also indicated "there is
          still some spasm in the back of the neck and evidence of
          straightening of the cervical spine."

MetLife again unfairly interpreted these reports and the Policy language and
still concluded that I am capable of working an eight (8) hour day and therefore
no longer disabled according to the terms of the Policy, and unfairly refused
to change its position.

As a result of the unfair and deceptive claims acts, I have been damaged in the amount of $16,200.00 for the benefits due me for the months of August 2003 through January 2004. In addition, I have been deprived, since December 1999, of the financial security and peace of mind promised to myself and my family by Lincoln Life when I first purchased this Policy. During this entire time period, MetLife was aware that I had been routinely paid residual disability benefits by Paul Revere, now UnumProvident, and total disability benefits from CNA Insurance Company.

Demand is hereby made for payment to me in the amount of $16,200.00 within thirty (30) days. In addition, demand is hereby made that MetLife cease its unfair interpretation of the Policy language and pay me further benefits without any reservation of rights. MetLife's failure to grant my demand for relief could result in your company being liable, under c. 93A, for up to three times my actual damages, together with attorneys fees.

Lastly, enclosed is copy of report from Roland R. Caron, M.D., dated February 21, 2004, which further documents that I am suffering from:

1. Chronic neck strain;
2. Persistent muscle spasms in the back of my neck;
3. Chronic inflammation of my nerve roots;
4. Further degeneration of his cervical spine; and
5. That I should not work for more than 4 to 6 hours per day.

If MetLife still insists in denying payment of my residual disability benefits, it will be further evidence of the bad faith and unfair interpretation of the Policy language and the medical records.

Very truly yours,

Joseph M. Losapio
JML/lar

enclosure

8

**04-40156**

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Joseph M. Losapio

**DEFENDANTS**

Metropolitan Life Insurance Co.

**(b)** County of Residence of First Listed Plaintiff  Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

John F. Keenan     508-791-8181
390 Main St.
Worcester, MA 01608

Attorneys (If Known)     781-255-7401

James J. Ciapciak
Ciapciak & Associates, P.C.
99 Access Rd.
Norwood, MA 02062

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgement | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination Under Equal Access to |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | or Defendant) | Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | Security Act | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Diversity: 28 USC § 1331, et seq.
Plaintiff seeks enforcement of a contract for disability insurance.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $2700/mo 8/03- until age 65
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):

JUDGE                DOCKET NUMBER

DATE 8/16/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04-40156

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) *Losapio v.*
*Life Insurance Co.*

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
    COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

    ___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,        *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

    X    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

    ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

    ___  V.    150, 152, 153.

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
    HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

    _____

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
    COURT?
                                                          YES          (NO)

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
    PUBLIC INTEREST?  (SEE 28 USC §2403)
                                                          YES          (NO)

    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                          YES          NO

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
    28 USC §2284?
                                                          YES          (NO)

7.  DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
    COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
    SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                          (YES)        NO

    A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

         EASTERN DIVISION       (CENTRAL DIVISION)        WESTERN DIVISION

    B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
         GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

         EASTERN DIVISION       CENTRAL DIVISION           WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  *James J. Ciapciak, Ciapciak & Associate, P.C.*
ADDRESS  *99 Access Rd. Norwood MA 02062*
TELEPHONE NO.  *781-255-7401*

(Cover sheet local.wpd - 11/27/00)